**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Damien Miguel Zepeda,

             Petitioner,

v.

United States of America,

             Respondent.

No. CV-17-01229-PHX-ROS
No. CR-08-01329-PHX-ROS-1

**ORDER**

Pending before the Court are two motions filed by Petitioner Damien Miguel Zepeda seeking to vacate his convictions in the criminal matter, CR-08-01329-PHX-ROS-1, under 28 U.S.C. § 2255[1] (Doc. 1; CR-08-01329-PHX-ROS-1 Doc. 236),[2] or reduce his sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (CR-08-01329-PHX-ROS-1 Doc. 246).

On October 25, 2008, Zepeda and two of his younger brothers went to a residence on the Ak-Chin Indian Reservation to confront Zepeda's former girlfriend (hereinafter referred to by her initials, "SA"). (Doc. 55 at 1-2; CR-08-01329-PHX-ROS-1 Doc. 269 at 2). During the confrontation, Zepeda hit SA in the head with a blunt object several times and shot at two other persons present, one adult male ("DP") and one minor female ("C"). (Doc. 55 at 2; CR-08-01329-PHX-ROS-1 Doc. 269 at 2-3). DP suffered several

---

[1] Zepeda's motion to vacate pursuant to 28 U.S.C. § 2255 was filed in both the habeas case, CV-17-01229-PHX-ROS (Doc. 1), and his criminal case, CR-08-01329-PHX-ROS-1 (CR-08-01329-PHX-ROS-1 Doc. 236). This Order resolves both.
[2] All docket citations in this Order are to docket in the civil matter, CV-17-01229-PHX-ROS, unless otherwise noted.

gunshot wounds while shielding C with his body.  (Doc. 55 at 2; CR-08-01329-PHX-ROS-1 Doc. 269 at 2-3).

Magistrate Judge James F. Metcalf issued a Report and Recommendation ("R&R") recommending that Zepeda's § 2255 motion be granted in part.  (Doc. 55 at 38-39).  The R&R recommends vacatur of the conviction and sentence on Count 3 of the indictment.  (Doc. 55 at 39).  The R&R also recommends that Zepeda's sentence on Counts 1, 2, 4, 5, 6, 7, 8, and 9 be vacated and that Zepeda should be resentenced on those counts.  (Doc. 55 at 39).  With the exceptions noted below, the R&R will be adopted.  Zepeda's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1; CR-08-01329-PHX-ROS-1 Doc. 236) will therefore be granted in part.

Zepeda's Amended Motion for Compassionate Release/ Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (CR-08-01329-PHX-ROS-1 Doc. 246) contends that Zepeda is eligible for compassionate release for several reasons.  The primary basis for relief is the disparity between Zepeda's sentence and defendants sentenced under the First Step Act, Pub. L. No. 115-391 (2018).  The Court holds Zepeda is not entitled to compassionate release.  The Court will deny Zepeda's motion for sentence reduction without prejudice.  He may refile the motion which will be fully briefed and resolved at the resentencing.

## BACKGROUND

### I.    Factual background

On October 25, 2008, Damien Miguel Zepeda ("Zepeda") and his brother Matthew were drinking beer at their mother's house in Maricopa, Arizona.  *See United States v. Zepeda*, 792 F.3d 1103, 1107 (9th Cir. 2015) (en banc).   Zepeda asked Matthew and their brother, Jeremy, if they would like to go to a party.  *Id.*  Both brothers agreed. *Id.*  The Zepeda brothers then went to DP's house, which was located on the Ak-Chin Reservation.  *Id.*  Outside the house, the brothers drank beer and smoked marijuana.  *Id.* Eventually, Zepeda told Jeremy to "grab something from under the front seat."  *Id.* Because Jeremy was not paying attention, Matthew reached under the seat and obtained

a shotgun.  *Id.*  Zepeda told Matthew to fire the shotgun if he heard gunshots.  *Id.*

Zepeda, wielding a pistol, went and knocked on the front door of the house.  *Id.*  Zepeda asked to see his former girlfriend, SA.  *Id.*  DP had been giving SA a tattoo when Zepeda arrived.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 2).  Zepeda asked SA to leave with him.  *Zepeda*, 792 F.3d at 1107.  SA refused and an argument ensued between Zepeda and SA.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 2).  At one point during the argument, Zepeda repeatedly hit SA on the head with a hard object.[3]  *Zepeda*, 792 F.3d at 1107.  SA fell to the ground and then ran toward DP's residence.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 2).

Alerted by the commotion, C went outside to check on SA.  *Zepeda*, 792 F.3d at 1107.  C told police she witnessed Zepeda hit SA with a gun.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 2).  C tried to run away but she tripped and fell.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 2).  When C looked up, Zepeda was shooting at her.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 2).

DP, who was urinating off the porch at the time, heard the gunshots and walked to the southeast corner of the house.  *Zepeda*, 792 F.3d at 1107.  He covered C with his body to "shield her" from the gunshots.  *Id.*  DP was shot while holding C.  *Id.*  C testified, "[t]he shooting kept going and going."  *Id.*  She said, "I had blood all on my back and I thought I got shot and [DP] said, 'You're okay.  Just—I got shot.  Just run.  Please just run.'"  *Id.*  at 1108.  She was able to flee into the house.  *Id.*  DP told the police that he remembered being shot by multiple people.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 2).  Zepeda and his brothers fled after DP managed to disarm Zepeda.  *See Zepeda*, 792 F.3d at 1108.

DP suffered several gunshot wounds.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 3).  He suffered a wound to the left groin, resulting in vascular injuries and injuries to his

---

[3] The record is somewhat unclear whether this object was Zepeda's pistol or different hard object.  *Compare Zepeda*, 792 F.3d at 1107 ("Zepeda hit her in the head multiple times with something hard.") *with* CR-08-01329-PHX-ROS-1 Doc. 269 at 2 ("Zepeda hit [SA] in the head with the butt of the gun several times.").  For present purposes it does not matter whether the object was a pistol or not.

colon.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 3).  He suffered a through-and-through gunshot wound to his right wrist, which caused nerve and vein damage.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 3).  And he suffered gunshot or shotgun pellet wounds to his upper chest and shoulders.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 3).  DP was not discharged from the hospital until January 9, 2009, more than two months after the shooting.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 3).

## II.   Procedural background

A nine-count indictment, filed on November 12, 2008, charged Zepeda, Matthew, and Jeremy with: one count of conspiracy to commit assault with a dangerous weapon and to commit assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153, 371, and 2; one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153, 113(a)(6), and 2; three counts of assault with a dangerous weapon, in violation of 18 U.S.C. §§ 1153, 113(a)(6), and 2; and four counts of using a firearm during a crime of violence, 18 U.S.C. §§ 924(c)(1)(A).  (CR-08-01329-PHX-ROS-1 Doc. 269 at 3-4); *Zepeda*, 792 F.3d at 1108.  The indictment was charged pursuant to the Indian Major Crimes Act, 18 U.S.C. § 1153, which authorizes federal jurisdiction over certain crimes committed by Indians on Indian reservations.  *Zepeda*, 792 F.3d at 1106. Matthew pled guilty to assault resulting in serious bodily injury and to use of a firearm during a crime of violence.  *Id.* at 1108.  Matthew was released from prison on April 24, 2014.  (CR-08-01329-PHX-ROS-1 Doc. 246 at 7).  Jeremy pled guilty to misprision of a felony.  *Zepeda*, 792 F.3d at 1108.  He was released on November 19, 2009.  (CR-08-01329-PHX-ROS-1 Doc. 246 at 7).  Zepeda was convicted on all nine counts.  *Zepeda*, 792 F.3d at 1108-09.

On March 22, 2010, the Court sentenced Zepeda to 1,083 months' imprisonment. (Doc. 55 at 3).  Zepeda received: 60 months on Count 1 (conspiracy to commit assault resulting in serious bodily injury); 63 months on Count 2 (assault resulting in serious bodily injury); 63 months per count for Counts 4, 6, and, 8 (assault with a dangerous weapon).  (Doc. 55 at 3).  These sentences run concurrently.  (Doc. 55 at 3).  Zepeda was

further sentenced to 120 months on Count 3 (use of a firearm during a crime of violence), and 300 months per count for Counts 5, 7, 9 (use of a firearm during a crime of violence). (Doc. 55 at 3).  The sentences on Counts 3, 5, 7, and 9 ("the § 924(c) convictions") run consecutive to one another and consecutive to the concurrent sentences imposed on Counts 1, 2, 4, 6, and 8.  (Doc. 55 at 3).

Zepeda appealed his conviction.  *See United States v. Zepeda*, 738 F.3d 201 (9th Cir. 2013).   A divided panel of the Ninth Circuit affirmed Zepeda's conviction for conspiracy but reversed his convictions on the other eight counts on the ground that the government introduced insufficient evidence to support the jury's finding that Zepeda is an Indian.  *Zepeda*, 792 F.3d at 1109.  The panel rejected all of Zepeda's other arguments challenging his convictions.  *Id.* (citing *Zepeda*, 738 F.3d at 208; *United States v. Zepeda*, 506 F.App'x 536, 538-39 (9th Cir. 2013)).

The Ninth Circuit, sitting en banc, affirmed the district court judgment.  *Id.* at 1116.  The en banc court held that the government adequately demonstrated Zepeda is an Indian within the meaning of the Indian Major Crimes Act, held his sentence was not unreasonable, and adopted the panel's reasons for rejecting all of Zepeda's other arguments.  *Id.* at 1109 (citing *Zepeda*, 738 F.3d at 207-08; *Zepeda*, 506 F.App'x at 538-39).

On April 25, 2017, Zepeda filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 asserting 11 grounds for relief.  (Doc. 1).  This Order discussing Zepeda's § 2255 motion will follow the organization of the R&R, which separates Zepeda's claims for relief as follows:

- Ground 1: Ineffective assistance of counsel regarding Zepeda's voluntary intoxication.
- Ground 2: Ineffective assistance of counsel related to the failure of Zepeda's counsel to object or seek curative instruction to a variety of alleged errors at trial.
- Ground 3: An alleged violation of the Confrontation Clause of the Sixth

Amendment.

- Ground 4: Erroneous voluntary intoxication instruction.

- Ground 5: Denial of the right to a fair trial.

- Ground 6: Misrepresentation of evidence by the prosecution.

- Ground 7: Insufficiency of evidence.

- Ground 8: Cumulative error, resulting in a denial of the right to a fair trial.

- Ground 9: Sentencing error based on the misapprehension of judicial discretion by the trial court and new law under *Dean v. United States*, 137 S.Ct. 1170 (2017).

- Ground 10: Sentencing error under *Johnson v. United States*, 559 U.S. 133 (2010) and *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015).

- Ground 11: Erroneous consecutive terms for the § 924(c) offenses.

(Doc. 55 at 5-6).  The government responded on July 12, 2017, arguing that several of these grounds should be rejected because they were resolved on direct appeal.  (Doc. 13). The government also contends Ground 10 is procedurally barred, and that several grounds are without merit.  (Doc. 55 at 6).

On June 10, 2021, the Supreme Court decided *Borden v. United States*, 141 S.Ct. 1817 (2012).  The Court held that recklessness does not satisfy the *mens rea* requirement for a "violent felony" under Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *Id.* at 1821-22.  In other words, the Court held that conviction under § 924 requires proof of either purpose or knowledge on the part of the defendant.  *Id.* at 1822.  The parties agree that Zepeda's conviction and sentence on Count 3 of the indictment must be vacated pursuant to *Borden* because assault resulting in serious bodily injury—the predicate offense to Count 3—can be committed with a mental state less than purpose or knowledge.[4]  (CR-08-01329-PHX-ROS-1 Doc. 269 at 4).

On July 29, 2021, Zepeda filed an Amended Motion for Compassionate Release/

---

[4] *Borden* held offenses which can be committed with a mental state less than purpose or knowledge are not "violent felon[ies]" and therefore cannot serve as a predicate offense under § 924(e).  *See Borden*, 141 S.Ct. at 1834.  The parties agree *Borden* is applicable to Zepeda's convictions under § 924(c).  (CR-08-01329-PHX-ROS-1 Doc. 269 at 4).

Sentencing Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A).  (CR-08-01329-ROS Doc. 246 at 1).  Zepeda argues that sentence reduction or compassionate release are warranted by some combination of: (1) the severity of his sentence relative to others who commit similar crimes; (2) the enactment of the First Step Act of 2018, Pub. L. No. 115-391, which decreased the mandatory minimum sentences for persons who commit crimes he committed; (3) his youth at the time he committed the crimes for which he was convicted; and (4) alleged risk factors that place him at greater risk of severe outcomes if he is reinfected with COVID-19 or a variant thereof.  (CR-08-01329-PHX-ROS-1 Doc. 246 at 20-35).  The government argues that neither sentence reduction nor compassionate release are warranted.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 20).

**ANALYSIS**

**I.   Zepeda's § 2255 motion**

 **A. Claims decided on direct appeal**

  The government argues that several of Zepeda's claims should be dismissed as resolved or waived on direct appeal.  (Doc. 13 at 13-15).  Specifically, the government contends that the following claims should be resolved against Zepeda based on three opinions issued by the Ninth Circuit on direct appeal:

- Zepeda's claim that a Tribal Enrollment Certificate was improperly admitted into evidence in violation of the Confrontation Clause;
- Zepeda's claim that the lack of a voluntary intoxication instruction prevented a proper finding of guilty by the jury;
- Zepeda's claim that prosecutorial vouching and interference with a witness deprived him of the right to a fair trial;
- Zepeda's claim that the prosecutor misstated evidence during the closing argument;
- Zepeda's claim that there was insufficient evidence to support his convictions due to the lack of a jury instruction regarding voluntary intoxication;
- Zepeda's claim that there was insufficient evidence that he is an Indian.

- Zepeda's claim that there was cumulative error; and

- Zepeda's claim that he should not have received consecutive § 924(c) sentences because all the sentences were based on the same underlying offence.

(Doc. 13 at 13-15).  Zepeda's reply to the government's response does not address the government's argument that the claims listed above have been resolved or waived.  (Doc. 53).

The Ninth Circuit has long held "that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a [§ ]2255 motion."  *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972).  With the exception of the arguments related to vouching and the sufficiency of evidence of mens rea, all of the above claims had been resolved by the Ninth Circuit and therefore are not reviewable in this matter.  *See Zepeda*, 792 F.3d 1103 (9th Cir. 2015) (en banc); *Zepeda*, 742 F.3d 201 (9th Cir. 2013); *Zepeda*, 506 F.App'x 536 (9th Cir. 2013).

Zepeda argues his right under the Confrontation Clause of the Sixth Amendment was violated by introduction of a Tribal Enrollment Certificate.  (Doc. 1 at 9).  Zepeda did not object at trial to the Court's admission of the Certificate.  *Zepeda*, 738 F.3d at 207.  Applying a plain error standard, the Ninth Circuit on direct appeal held the Court "did not plainly err in admitting the Tribal Enrollment Certificate into evidence pursuant to the parties' stipulation."  *Id.* at 208.  This claim is therefore unreviewable because it was resolved by the appellate court on direct review.

Zepeda argues the Court erred by failing to give a voluntary intoxication instruction despite evidence that Zepeda was voluntarily intoxicated at the time he committed the crimes.  (Doc. 1 at 10).  The Ninth Circuit rejected this argument on direct appeal in an unpublished memorandum disposition.  *See Zepeda*, 506 F.App'x at 538 ("Zepeda argues the district court erred in failing to give a voluntary intoxication instruction at trial.  We disagree.").

Zepeda argues his right to a fair trial was violated by (1) the prosecution vouching

regarding plea agreements, (2) a statement by the prosecutor that Matthew committed perjury while testifying in favor of Zepeda, (3) witness interference, (4) a sleeping juror, and (5) collective error. (Doc. 15 at 1). The R&R suggests that each of these arguments were rejected on direct review. (Doc. 55 at 9). Upon review of the Ninth Circuit's opinions on direct appeal, the Court finds the court of appeals clearly rejected four of these arguments in the memorandum disposition. *Zepeda*, 506 F.App'x at 538-39 (rejecting Zepeda's arguments regarding perjury allegations, witness interference, the sleeping juror, and collective error).

However, the Court finds Zepeda's vouching claim was not resolved on direct appeal. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993). Zepeda contends the government improperly vouched in favor of Jeremy and Matthew based on their plea agreements. (Doc. 1 at 8, 15). The Ninth Circuit did not explicitly address this particular vouching issue direct appeal. The Ninth Circuit, however, did hold that no prejudicial plain error occurred when the prosecutor misstated the evidence regarding what Zepeda told Jeremy before the crime was committed. *Zepeda*, 506 F.App'x at 538. The Court does not find this holding precludes consideration of Zepeda's vouching argument because the Ninth Circuit did not explicitly address it. The Court will therefore consider the merits of the vouching claim below. *See infra* Part II.H.

Zepeda argues the prosecution misstated evidence when it improperly suggested that Zepeda told others he was "going to do some dirt," even though no such testimony was admitted into evidence. (Doc. 1 at 16). The Ninth Circuit's memorandum disposition rejected this claim, finding "no prejudicial plain error resulted in light of the ample additional evidence from which the jurors could have inferred a conspiratorial agreement." *Zepeda*, 506 F.App'x at 538.

Zepeda argues there was insufficient evidence to convict based on his mental state,

his status as an Indian, and his assault charges.  (Doc. 1 at 17-18).  The R&R correctly notes that, although the Ninth Circuit sitting en banc resolved Zepeda's argument regarding his Indian status, *Zepeda*, 792 F.3d at 1116, it did not adequately address whether the jury had sufficient evidence of mental state to convict.  (Doc. 55 at 9-10).  The memorandum disposition considered the Zepeda's voluntary intoxication argument, but only in the context of the determining that the Court did not plainly err by failing to issue a voluntary intoxication instruction *sua sponte.  See Zepeda*, 506 F.App'x at 538.  The Ninth Circuit did not consider the question whether there was sufficient evidence of mental state notwithstanding the failure of the Court to instruct.  In contrast to the R&R, the Court finds that the Ninth Circuit did not resolve Zepeda's argument with respect to sufficiency of evidence on his assault charges because it only considered sufficiency of that evidence in the context of conspiracy.  *Id.* at 539.  The Court will therefore consider the merits of these claims below. *See infra* Parts II.D, II.E.

Zepeda argues cumulative trial errors violated his right to a fair trial.  (Doc. 1 at 23).  This argument was rejected by the Ninth Circuit in its memorandum disposition.  *Zepeda*, 506 F.App'x at 539.

Finally, Zepeda argues the Court erred in imposing consecutive prison terms on the § 924(c) violations.  (Doc. 1 at 25-27).  However, the Ninth Circuit en banc court rejected this claim, holding, "[u]nder 18 U.S.C. § 924(c), the district court was required to impose consecutive mandatory minimum sentences on Zepeda's convictions for use of a firearm during a crime of violence."  *Zepeda*, 792 F.3d at 1116.

Excepting the claims previously resolved on appeal, the following claims remain:

- Ground 1: Ineffective assistance of counsel regarding Zepeda's voluntary intoxication.

- Ground 2: Ineffective assistance of counsel related to the failure of Zepeda's counsel to object or seek curative instruction to a variety of alleged errors at trial.

- Ground 3: An alleged violation of the Confrontation Clause of the Sixth

Amendment with respect to the ballistics report.

- Ground 5: Denial of the right to a fair trial resulting from prosecutorial vouching.
- Ground 7: Insufficiency of evidence as to mental state and assault.
- Ground 9: Sentencing error based on the misapprehension of judicial discretion by the trial court and new law under *Dean v. United States*, 137 S.Ct. 1170 (2017).
- Ground 10: Sentencing error under *Johnson v. United States*, 559 U.S. 133 (2010) and *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015).

Zepeda argues the government has waived the argument that any of the above grounds were procedurally defaulted by failing to raise procedural default in its response. (Doc. 53 at 20). "Ordinarily, the government's failure to raise the petitioner's procedural default at the appropriate time waives the defense." *United States v. Barron*, 172 F.3d 1153, 1156 (9th Cir. 1999). The R&R recommends that any procedural default defense is waived because "here, Respondent has not just failed to raise a procedural default defense, but has waived it by explicitly deleting it from its briefs." (Doc. 55 at 13). The Court agrees and will proceed to the merits.

**B.  Ineffective assistance of counsel claims**

Zepeda asserts his trial counsel was ineffective in several respects. (Doc. 55 at 13). The Court agrees with the government that Zepeda's counsel was not ineffective.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held a "convicted defendant's claim that counsel's assistance was so defective as to require a reversal of conviction . . . has two components." *Id.* at 687. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

Zepeda argues his trial counsel was ineffective in failing to raise the affirmative defense of voluntary intoxication and seek a jury instruction despite evidence that Zepeda and his co-defendants were intoxicated by alcohol and marijuana.   (Doc. 55 at 13). Zepeda concedes that he never discussed his level of intoxication with counsel.  (Doc. 1 at 7).

Although the voluntary intoxication defense may have helped Zepeda, "[t]he law does not require counsel to raise every available nonfrivolous defense." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations omitted).   The R&R recommends finding that trial counsel was not constitutionally ineffective because "trial counsel made a reasonable tactical choice to pursue the defense most in line with [Zepeda]'s version of the facts, rather than a defense supported by evidence of [Zepeda]'s ingestion of some indeterminate amount of alcohol and/or marijuana."  (Doc. 55 at 14).  The Court agrees it was not ineffective for Zepeda's counsel to direct his focus away from voluntary intoxication given the limited evidence supporting the defense.

Zepeda argues trial counsel was ineffective by failing to object or seek curative instructions when the prosecution improperly vouched for co-defendants by informing the jury they had pled guilty and were testifying to receive a reduced sentence.  (Doc. 1 at 8).  However, as explained below, *see infra* Part II.H, the Court finds Zepeda did not have a valid claim on this ground at trial.  *See Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.").   The R&R correctly notes that Zepeda "points to nothing to show" vouching occurred, or that reference to the plea agreements of his co-defendants was improper.  (Doc. 55 at 15) (quoting *United States v. Halbert*, 640 F.2d 1000, 1005 (9th Cir. 1981)).

Zepeda argues trial counsel was ineffective for failing to object or seek curative instructions based on improper statements in the prosecution's closing argument.  (Doc. 1 at 8).   Specifically, Zepeda argues his trial counsel should have objected to the prosecution's statement in the closing argument about a "conspiracy" to "ambush" the

victims with a "dirty" "three-on-one" attack.  (Doc. 1 at 8).  The Court agrees with the R&R that this statement was not improper.  *See United States v. Tucker*, 641 F.3d 1110, 1120 (9th Cir. 2011) ("Prosecutors can argue reasonable inferences based on the record, and have considerable leeway to strike 'hard blows' based on the evidence and all reasonable inferences from the evidence.").  As the R&R suggests, "'ambush' and 'dirty' were hard blows, [but] they were supported by the evidence, and were not a simple call to passion or prejudice." (Doc. 55 at 16).

Zepeda argues counsel was ineffective in failing to challenge the failure of the forms of verdict to require a designation of degree of liability (i.e., conspirator, aiding and abetting, or principal offender liability) on the conspiracy charges, which he contends resulted in questions by the jury during deliberation.   (Doc. 1 at 8). The R&R recommends the Court find the forms were not erroneous and thus counsel was not deficient in failing to challenge them.  (Doc. 55 at 18).  The government correctly notes that it was not required to prove the role of each co-conspirator.  *United States v. Vaandering*, 50 F.3d 696, 702 (9th Cir. 1995).  Moreover, the forms of verdict stated the degree of liability in the alternative for each relevant charge: "the jury finds defendant criminally responsible, either as a principal, aider and abettor or co-conspirator."  (CR-08-01329-PHX-ROS-1 Doc. 113).   The Court finds the form of verdict was non-erroneous and, even if it was erroneous, the form was clear enough that counsel was not ineffective by failing to object to the form.

Zepeda argues trial counsel was ineffective for failing to challenge a "blanket verdict" that may have resulted in a conviction of Zepeda based on Matthew's possession of a shotgun, rather than just the handgun Zepeda had in his possession.  (Doc. 55 at 18).  However, as the R&R notes, Zepeda's "legal argument is valid, but his facts wrong." (Doc. 55 at 18).  Zepeda's multiple convictions under § 924(c)(1) were not based on the number of weapons he had, but rather on the total number of predicate crimes of assault. (Doc. 55 at 18).  Zepeda would not have had more convictions if he had possessed the shotgun, and therefore trial counsel's failure to object to the vague statement by the

prosecution did not affect Zepeda's defense.

Zepeda argues trial counsel erred by failing to raise mutual defense with a co-defendant. (Doc. 1 at 8). Trial counsel raised self-defense. (Doc. 1 at 8). Zepeda's trial counsel has since stated, "[a]fter reviewing the reports, conducting additional investigation, and my numerous discussions with Mr. Zepeda, I determined that our best strategy at trial was to discredit the government's witnesses with the various inconsistencies evident in their statements. This defense comported with Mr. Zepeda's version of the events of the evening." (Doc. 13-1 at 1). As the R&R correctly noted, Zepeda has been unable to identify any evidence, including his own testimony, which would have supported a mutual defense argument. (Doc. 55 at 20-21). It was not ineffective assistance for Zepeda's trial counsel to raise only the affirmative defenses which were reasonably supported by evidence and testimony.

Zepeda argues trial counsel acted ineffectively by stipulating to admission of the Tribal Enrollment Certificate that was used to establish the essential jurisdictional element of Indian status under the Indian Major Crimes Act. (Doc. 1 at 8, 13). Zepeda objects that the Tribal Enrollment Certificate, which was issued on October 7, 2009 and introduced into evidence on October 22, was "was facially insufficient to prove that Damien [Zepeda] was a tribe member on the date of the offense which occurred more than one year earlier." (Doc. 1 at 8). The Ninth Circuit considered on direct appeal the question whether admission of the Tribal Enrollment Certificate violated Zepeda's rights under the Confrontation Clause and held:

> Zepeda argues that waiver of a fundamental constitutional right cannot ever constitute a sound trial strategy, particularly where, as here, the Tribal Enrollment Certificate purported to establish an essential jurisdictional element. It appears from the record, however, that Zepeda's attorney strategically focused Zepeda's defense on the implausibility of government witnesses' testimony, as compared to Zepeda's markedly different version of the relevant events. He chose not to direct the jury's attention to Zepeda's Indian status, and informed the jury during his opening statement: "I will stipulate and concede things that ought to be conceded in terms of my client, Mr. Zepeda." Although ultimately not a winning strategy, it was clearly "deliberately made as a matter of trial tactics," and did not involve a "basic trial

right[]" . . .   Nor, as we discuss at length below, was the Tribal Enrollment Certificate sufficient to carry the government's burden of proof of Zepeda's Indian status. Thus, Zepeda's attorney did not violate Zepeda's Confrontation Clause rights when he stipulated to admission of the Certificate.

*Zepeda*, 738 F.3d at 207-08 (quoting *United States v. Gamba*, 541 F.3d 895, 901 (9th Cir. 2008)).   The R&R recommends that, although this statement by the Ninth Circuit panel did not decide the ineffectiveness issue raised in Zepeda's § 2255 motion, it demonstrates that the decision to stipulate to admission of the certificate was a tactical choice by trial counsel.  (Doc. 55 at 22).  The Court agrees and holds the stipulation of the certificate, although ultimately not a winning strategy, was a constitutionally adequate trial tactic. *Cf. United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995) ("In fact, there exists a 'strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'") (quoting *United States v. Palomba*, 31 F.3d 1456, 1460 (9th Cir. 1994) (internal quotation marks omitted)).

Zepeda argues trial counsel was ineffective because "counsel failed to object or request curative action when, after observing and acknowledging that a juror was sleeping during victim [DP's] testimony, the trial judge failed to conduct a required inquiry." (Doc. 1 at 13).  The Ninth Circuit's memorandum disposition rejected Zepeda's related argument "that the district court erred in failing to conduct an evidentiary hearing when the prosecutor alerted her that a juror was asleep."  *See Zepeda*, 506 F.App'x at 538.  The court reasoned: "'A single juror's slumber . . . is not per se plain error.'  Zepeda failed to demonstrate that the juror's inattention 'deprived him of his right to an impartial jury and, more generally, to a fair trial' because the record reflects that the juror was asleep during key testimony that incriminated him.  The juror's inattention therefore, if anything, was harmful to the government."  *Id.* (quoting *United States v. Olano*, 62 F.3d 1180, 1189 (9th Cir. 1995)).  Ineffective assistance of counsel under *Strickland* requires that the ineffectiveness prejudices the defense.  *See Strickland*, 466 U.S. at 687.  However, the reasoning of the Ninth Circuit memorandum disposition in *Zepeda*

precludes the finding that Zepeda's defense was prejudiced by his counsel's or the Court's failure to more deeply probe the situation surrounding the sleeping juror.

Zepeda argues his trial counsel was ineffective for failing to challenge whether the predicate offenses underlying the § 924(c) weapons charges could qualify as crimes of violence. (Doc. 1 at 14). Zepeda contends trial counsel should have argued his predicate offenses were not crimes of violence within the meaning of 18 U.S.C. § 924(c)(3)(A), (B). Zepeda's claim with respect to 18 U.S.C. § 924(c)(3)(A) was rejected by the Ninth Circuit en banc decision. *See Zepeda*, 792 F.3d at 1116. It was not ineffective assistance of counsel for Zepeda's trial counsel not to raise this meritless argument. *Cf. Baumann*, 692 F.2d at 572. Zepeda's claim with respect to 18 U.S.C. § 924(c)(3)(B) relies on the Supreme Court's interpretation in *Johnson v. United States*, 559 U.S. 133 (2010). (Doc. 1 at 14, 25). *Johnson* was not decided until after Zepeda's trial. It was not unreasonable for trial counsel to rely on the understanding of law that prevailed at the time of trial. *Cf. Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) ("The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.") (citations omitted). Counsel cannot be expected to possess prescient knowledge of the Supreme Court's rulings before they occur. *See United States v. Zamudio*, 787 F.3d 961, 966 (9th Cir. 2015) ("*Strickland* does not require attorneys to make arguments based on cases that have not yet been decided.").

### C. Ballistics report

Zepeda argues his rights under the Confrontation Clause were violated by the introduction of a ballistics report, based on stipulation of counsel, without testimony from its author. (Doc. 1 at 9). This issue is similar to whether Zepeda's Confrontation Clause rights were violated by introduction of the Tribal Enrollment Certificate. In analyzing that question, the Ninth Circuit held, "our case law recognizes that 'defense counsel may waive an accused's constitutional rights as a part of trial strategy. Counsel's authority extends to waivers of the accused's Sixth Amendment right to cross-examination and

confrontation."  *Zepeda*, 738 F.3d at 207 (citing *United States v. Gamba*, 541 F.3d 895, 900 (9th Cir. 2008); *Wilson v. Gray*, 345 F.2d 282, 287-88 (9th Cir. 1965)).  Zepeda's counsel therefore had authority to stipulate to admission of the ballistics report, and to waive his right of confrontation.

### D.  Sufficient evidence of scienter

Zepeda argues there was insufficient evidence of his mental state to obtain a conviction because of a lack of voluntary intoxication instruction.  (Doc. 1 at 17).  As the R&R clearly notes, Zepeda has failed to show how the lack of an instruction demonstrates insufficient evidence of the requisite mental state.  (Doc. 55 at 25).   The record demonstrates there was ample evidence at trial from which the jury could infer that Zepeda had the requisite mental state.  For example, there was evidence that Zepeda pre-planned by bringing guns and by telling Matthew to shoot if he heard gunshots. *Zepeda*, 792 F.3d at 1107.  This evidence was sufficient for a jury to infer Zepeda's intent.  *Cf. United States v. Carranza*, 289 F.3d 634, 641-42 (9th Cir. 2002) ("A challenge to the sufficiency of the evidence requires this court to determine if 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'") (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Moreover, Zepeda has adduced no evidence that would tend to show he had achieved so severe a level of intoxication that he would have been precluded from forming the requisite intent.

### E.  Sufficient evidence of assault

Zepeda argues the "evidence was insufficient as to the charges of assault with a dangerous weapon upon [SA], [C], and [DP], and as to the charge of Assault resulting in Serious Bodily Injury as to [DP]."  (Doc. 1 at 21).  Specifically, Zepeda argues that no one saw him strike SA with a gun and that no evidence showed Zepeda actually fired while pointing a gun in their direction.  (Doc. 1 at 21-23).

But there was evidence of significant injuries, and the jury could reasonably infer that Zepeda shot the gun in the direction of the victims.  Because firing a weapon in the

direction of SA, C, and DP satisfies the standard for assault with a dangerous weapon, *see* 18 U.S.C. § 113(a)(3), it need not be proven that Zepeda hit SA with the gun.

There was substantial circumstantial evidence that Zepeda shot at SA, DP, and C. DP testified he suffered wounds from a shotgun and from a 9mm sidearm. (CR-08-01329-PHX-ROS-1 Doc. 189 at 30). Matthew testified he had the shotgun. (CR-08-01329-PHX-ROS-1 Doc. 188 at 18). A witness testified she saw Zepeda pointing "a handgun" and heard gunshots. (CR-08-01329-PHX-ROS-1 Doc. 187 at 53-54). No one testified they saw a person other than Matthew or Zepeda holding a gun, or that DP had a gun. *See, e.g.*, (CR-08-01329-PHX-ROS-1 Doc. 187 at 93) ("Q. Did you ever see [DP] with a gun? A. No."); (CR-08-01329-PHX-ROS-1 Doc. 188 at 18) ("Q. And is it your testimony today that you don't know because you didn't actually see a gun -- A. Yes. Q. -- other than the shotgun that you had? A. Other than the shotgun I had."); (CR-08-01329-PHX-ROS-1 Doc. 188 at 82) ("Q. . . No one indicated that [DP] had a firearm; correct? A. That's correct, sir."). An FBI agent testified that 21 9mm cartridges cases, all from the same brand, were found at the crime scene. (CR-08-01329-PHX-ROS-1 Doc. 187 at 63). Ballistics analysis associated 18 of 21 cartridges casings with the same firearm. (CR-08-01329-PHX-ROS-1 Doc. 187 at 65). 9mm ammunition, bearing the same brand markings as the ammunition found at the crime scene, was discovered in Zepeda's bedroom. (CR-08-01329-PHX-ROS-1 Doc. 187 at 67-69). In short, there was ample evidence from which the jury could determine that Zepeda shot at SA, DP, and C, and that his shots caused serious bodily injury to DP.

**F. No sentencing error**

Zepeda argues his sentence on the predicate offenses was "procedurally and substantively unsound" based on the Court's belief that it lacked discretion to alter the sentences on those offenses in light of the significant mandatory minimum sentences he received on his § 924(c) charges. (Doc. 1 at 25). Zepeda argues the Supreme Court's decision in *United States v. Dean*, 137 S.Ct. 1170 (2017), is a retroactively applicable change in law that allows sentencing judges to consider applicable mandatory minimum

sentences in sentencing on predicate offenses.  (Doc. 1 at 23-25).

In *Garcia v. United States*, the Ninth Circuit held *Dean* does not apply retroactively.  *Garcia v. United States,* 923 F.3d 1242, 1245 (9th Cir. 2019) ("Garcia contends that *Dean* announced a substantive rule because it 'altered the substantive reach of § 924(c) . . . .' That argument fails, however, because *Dean*'s rule is permissive, not mandatory.").  Zepeda's claim that *Dean* applies retroactively to his sentencing is therefore precluded by *Garcia*.

### G.  Crimes of violence under 18 U.S.C. § 924(c)(1)

#### 1.  *Johnson* and *Borden*

Zepeda argues that none of his predicate offenses qualify as crimes of violence within the meaning of § 924(c) after the decision in *Johnson v. United States*, 576 U.S. 591 (2015) and *United States v. Borden*, 141 S.Ct. 1817 (2021).

In its original 2017 response, the government argued Zepeda is procedurally barred from raising a *Johnson* argument because *Johnson* was decided before his direct appeal concluded.  (Doc. 13 at 31).   The government also contended *Johnson* was distinguishable because it was not concerned with § 924(c), Ninth Circuit precedent adverse to Zepeda's position controlled, and Zepeda's assault with a dangerous weapon is a crime of violence pursuant to § 924's "elements clause."  (Doc. 13 at 34-35).   The Court stayed proceedings to await decision in several Ninth Circuit and Supreme Court cases.  (Doc. 55 at 31-32).   *Borden*, the final decision in those cases, holds, "[o]ffenses with a *mens rea* of recklessness do not qualify as violent felonies under ACCA."  *Borden*, 141 S.Ct. at 1834.

As a result of *Borden*, the government now agrees with Zepeda that his "conviction on Count 3 should be vacated because the predicate, assault resulting in serious bodily injury, can no longer be considered a crime of violence."  (Doc. 48 at 5).

However, the parties disagree whether Zepeda's convictions on Counts 5, 7, and 9 should be vacated as well.  Counts 5, 7, and 9 were predicated on the assault with a dangerous weapon convictions in Counts 4, 6, and 8.  (Doc. 48 at 5).  The government

contends assault with a dangerous weapon remains a crime of violence sufficient to satisfy § 924(c).  (Doc. 48 at 5).  The government relies on *United States v. Gobert*, which held, "there is simply no room to find assault with a dangerous weapon under § 113(a)(3) anything but a crime of violence under § 924(c)(3)(A)'s elements clause." *United States v. Gobert*, 943 F.3d 878, 882 (9th Cir. 2019).  Zepeda argues *Gobert* cannot be reconciled with the Supreme Court's subsequent decisions in *Borden* and *Stokeling v. United States*, 139 S.Ct. 544 (2019).

If *Borden* applies retroactively to Zepeda's § 2255 motion, the Court agrees with the parties that Count 3 must be vacated because assault resulting in serious bodily injury is not a crime of violence.  *Borden* may also displace *Gobert*.  But, because *Borden* was decided several years after Zepeda's conviction became final following direct review, it must first be demonstrated that *Borden* applies retroactively.

### 2. *Borden* applies retroactively

*Borden* applies retroactively to Zepeda's collateral review motion.  In *Bousley v. United States*, the Supreme Court held that a habeas petitioner who was convicted under § 924(c)(1) could obtain an evidentiary hearing to demonstrate his actual innocence in light of a recent decision interpreting § 924(c) in a manner that would have precluded his guilt.  *Bousley v. United States*, 523 U.S. 614, 623-24 (1998); *cf. Vosgien v. Persson*, 742 F.3d 1131, 1134-35 (9th Cir. 2014) (applying *Bousley*).

As in *Bousley*, Zepeda is seeking to avail himself of a Supreme Court decision interpreting § 924(c) published after his conviction became final.  If the after-arising decision set forth a new *constitutional* rule of criminal procedure, Zepeda would have to satisfy *Teague v. Lane*'s retroactivity standard.  *See Bousley*, 523 U.S. at 619-20 (discussing *Teague v. Lane*, 489 U.S. 288 (1989)).  But as *Bousley* recognizes, "decisions of [the Supreme] Court holding that a substantive federal criminal statute does not reach certain conduct, . . . necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal.'  For under our federal system it is only Congress, and not the courts, which can make conduct criminal."  *Bousley*, 523 U.S. at

620-21 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).   The petitioner in *Bousley* was permitted to use a case interpreting the text of § 924(c) to support his claim of actual innocence, even though that case, *Bailey v. United States*, 516 U.S. 137, 144 (1995) (holding "use" of a firearm requires the government to show "active employment of the firearm" to obtain conviction under § 924(c)), was decided after his conviction became final.   *See Bousley*, 523 U.S. at 621, 624.   Zepeda is entitled to the same opportunity.

### 3.   Count 3 will be vacated; Counts 5, 7, 9 will not be vacated

Because the Court is satisfied *Borden* applies to Zepeda's § 2255 motion, it must reach the merits of Zepeda's claims as to Counts 3, 5, 7, and 9.   The Supreme Court has held that "crime[s] of violence" must be determined based on a "categorical approach," which asks "whether the least serious form of the offense meets the *Johnson* standard" for a crime of violence.   *See Gobert*, 943 F.3d at 881 (citing *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016); *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013)).   Thus, the question is whether the least serious form of Zepeda's assault convictions could be accomplished with merely a reckless or negligent mental state.

The Court agrees with the parties and the R&R that *Borden* requires vacatur of the conviction and sentence on Count 3, the § 924(c) conviction predicated on Zepeda's conviction in Count 2 for assault resulting in serious bodily injury.   The Court's jury instruction provided as an element of assault resulting in serious bodily injury: "the defendant intentionally *or recklessly* struck or wounded [DP] or used a display of force that reasonably caused [DP] to fear immediate bodily harm."   (CR-08-01329-PHX-ROS-1 Doc. 123 at 27) (emphasis added); *see also United States v. Loera*, 923 F.2d 725, 728 (9th Cir. 1991) ("At common law a criminal battery was shown if the defendant's conduct was reckless . . . A defendant can be convicted of assault under section 113(f) if a battery is proved.").   Thus, it is possible that Zepeda was convicted on the basis of mere recklessness because the statute and the jury instruction both permitted conviction on the basis of a mental state less than purpose or knowledge.   Zepeda's conviction and sentence

on Count 3 will be vacated.

However, Zepeda's conviction on Counts 5, 7, and 9 will not be vacated for two reasons.  First, the Ninth Circuit's decision in *Gobert* is extant.  *Gobert* clearly held assault with a dangerous weapon is a crime of violence under § 924(c)(3)(A) because a display of force with a dangerous weapon that causes a victim to fear imminent bodily injury (the least serious form of assault with a dangerous weapon) is a crime of violence. *See Gobert*, 943 F.3d at 882.  As the R&R points out, *Gobert* was decided after all the cases Zepeda relies on except *Borden*.  (Doc. 55 at 36).  Even if it were true that *Gobert* is wrongly decided, it is controlling precedent which this Court is bound to follow.

Second, assault with a dangerous weapon is distinguishable from assault resulting in serious bodily injury because although the latter requires mere recklessness, the former can only be satisfied by proof of intent.  The Court's instruction regarding assault with a dangerous weapon provided: "First, the defendant intentionally assaulted the victim by striking or wounding him/her or using a display of force that reasonably caused the victim to fear immediate bodily harm; Second, the defendant acted with specific intent to do bodily harm to the victim."  (CR-08-01329-PHX-ROS-1 Doc. 123 at 28).  The federal statute prohibiting assault is in accord.  *See* 18 U.S.C. § 113(a)(3) (prohibiting "[a]ssault with a dangerous weapon, with *intent* to do bodily harm") (emphasis added).   The logic of *Borden* therefore does not remove assault with a dangerous weapon from the reach of the "crime of violence" definition in § 924(c).  Any hypothetical case examined under the Supreme Court's "categorical approach," *see Johnson*, 576 U.S. at 596, would require purpose to cause harm or knowledge that harm will be caused, both of which are greater than recklessness.

The parties and the R&R agree that, as a result of vacatur of Count 3, the appropriate relief is for the Court to vacate Zepeda's sentence on all counts and conduct a resentencing.  (Doc. 55 at 37) (citing Doc. 48; Doc. 53 at 28).  The Court has jurisdiction to resentence Zepeda, and accordingly will do so.  *See United States v. McClain*, 133 F.3d 1191, 1193 (9th Cir. 1998) (holding that "following a successful § 2255 petition to

vacate a § 924(c) conviction and sentence, the district court has the authority to resentence a defendant . . . because the vacation of the § 924(c) sentence 'unbundled' the sentencing package") (internal citations omitted); *see also United States v. Avila Anguiano*, 609 F.3d 1046, 1049 (9th Cir. 2010) ("Such 'unbundling' is often warranted because conviction on the reversed counts may have affected the remaining counts.").

### H. Vouching

Zepeda argues the prosecution improperly vouched for his co-defendants.  (Doc. 1 at 8, 15).  Specifically, Zepeda argues "[p]rosecutors informed jury that co-defendants plead guilty and testified hoping to receive reduced sentence, thus improperly vouching for their reliability."  (Doc. 1 at 8).

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony."  *Necoechea*, 986 F.2d at 1276. Not all questions regarding guilty pleas constitute prohibited vouching.  "[W]hen the prosecution examines the codefendant as its witness in support of its case-in-chief, a question about the guilty plea is legitimate as the purpose is to support the reasonableness of the witness' claim to firsthand knowledge because of admitted participation in the very conduct which is relevant."  *United States v. Halbert*, 640 F.2d 1000, 1005 (9th Cir. 1981).  But the prosecution may not use a guilty plea to vouch for a codefendant as a witness. *See id*. (citing *United States v. Little Boy*, 578 F.2d 211 (8th Cir. 1978)).

The Court finds improper vouching did not occur.  Matthew Zepeda testified over the course of two days, October 21 and 22, 2009. The prosecutor mentioned Matthew Zepeda's plea agreement only once during the first day of testimony:

Q.  And under your plea agreement, you plead to testify truthfully; is that correct?

A.  That's correct.

Q.  And you also were given a benefit; is that correct?

A.  Yes, that is.

Q.  The benefit that you received is that you would receive a prison sentence of

1   between five years and ten years in prison; is that correct?

2       A.  That's correct.

3   (CR-08-01329-PHX-ROS-1 Doc. 187 at 30).  On the second day of Matthew's testimony,

4   during redirect examination, Matthew and the prosecutor engaged in an extended

5   colloquy regarding Matthew's plea to the same effect as the mention of the plea on the

6   first day.  (CR-08-01329-PHX-ROS-1 Doc. 188 at 4, 6, 8-9, 10-11, 14-17, 20).  The

7   prosecution also asked the third Zepeda co-defendant, Jeremy, about Jeremy's plea on

8   two occasions that day.  (CR-08-01329-PHX-ROS-1 Doc. 188 at 96, 143).  All of the

9   discussion with Matthew and Jeremy focused either on establishing that a plea had

10  occurred, or discussing the thought process behind the decision to plea.

11      Upon review of the record, the Court has not found any vouching statements.

12  And, of greater significance, Zepeda has not identified any of these statements that he

13  believes constitutes vouching.  (Doc. 1 at 8, 15).  All of the statements in the transcript

14  appear to merely concentrate on the plea itself and establishing the witnesses' own

15  testimonial credibility, rather than "plac[e] the prestige of the government behind a

16  witness through personal assurances of the witness's veracity."  *See Neocoechea*, 986

17  F.2d at 1276.  Thus, Zepeda's claim that prosecutorial vouching denied him a fair trial

18  fails on the merits.

19      **II.**    **Motion for compassionate release or to reduce sentence**

20      On July 29, 2021, Zepeda filed an Amended Motion for Compassionate Release/

21  Sentencing Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A).  (CR-08-01329-ROS Doc.

22  246 at 1).  18 U.S.C. § 3582(c) provides three circumstances in which a court may

23  modify a term of imprisonment.  First, the Court may modify a sentence if "extraordinary

24  and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).

25  Second, if a defendant satisfies age and duration-of-incarceration requirements and if the

26  Director of the Bureau of Prisons determines the defendant is not a danger to safety.  §

27  3582(c)(1)(A)(ii).  Third, if otherwise authorized by law.  18 U.S.C. § 3582(c)(1)(B).

28  Zepeda's motion raises only the first ground for modification—extraordinary and

compelling reasons.  Upon review of the parties' briefing, the Court concludes that Zepeda has not established he is entitled to compassionate release.  However, Zepeda's motion will be denied without prejudice to allow Zepeda to refile a motion for a reduced sentence in conjunction with resentencing as required by this Order.  The government will respond and Zepeda will reply.  The Court will consider and rule on the motion at resentencing.

### A. Zepeda has failed to demonstrate extraordinary or compelling reasons warrant his immediate release

The parties agree that Zepeda has exhausted administrative resources for compassionate release, as required by 18 U.S.C. § 3582(c)(1)(A), such that he may bring this motion.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 7).

Zepeda argues sentence reduction or compassionate release are warranted by some combination of: (1) the severity of his sentence relative to others who commit similar crimes; (2) the enactment of the First Step Act of 2018, which decreased the mandatory minimum sentences for persons who commit the crimes he committed; (3) his youth at the time he committed the crimes for which he was convicted; (4) his good behavior while in prison; and (5) alleged risk factors that place him at greater risk of severe outcomes if he is reinfected with COVID-19 or a variant thereof.  (CR-08-01329-PHX-ROS-1 Doc. 246 at 20-35).

The government argues in response that neither sentence reduction nor compassionate release are warranted because: (1) the First Step Act does not apply retroactively; (2) Zepeda's age does not constitute extraordinary or compelling reasons justifying immediate release; (3) Zepeda's fear of COVID-19 does not warrant release; and (4) Zepeda may continue to pose a danger to the community if released.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 10-19).

Because the policy statement governing compassionate release motions under § 3582(c)(1)(A) has not been updated since the First Step Act was enacted, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that

1    a defendant might raise.'"  *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021)

2    (quoting *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020)) (modifications in

3    original).  The Court will therefore address each ground raised by Zepeda in turn to

4    determine whether the grounds individually or collectively warrant relief.

5         Zepeda is correct that his sentence is severe relative to others who commit similar

6    crimes.  He points out that, in 2019, the median sentence for murder was 20 years; for

7    sexual abuse, 15 years; and for kidnapping, 10 years.  (CR-08-01329-PHX-ROS-1 Doc.

8    246 at 27) (citing U.S. SENT'G COMM'N, 2019 ANN. REP. & SOURCEBOOK OF FED.

9    SENT'G STATS., 64 (2020) [hereinafter U.S. Sentencing Commission 2019 Sourcebook]).

10   In other words, Zepeda's 90-year sentence is more than four times longer than the longest

11   median sentence for any type of crime available in the U.S. Sentencing Commission's

12   2019 sourcebook.  Zepeda's 90-year sentence is sixty times longer than the median

13   sentence for assault, the principal or predicate offense in 8 of Zepeda's 9 charges.  *See*

14   U.S. Sentencing Commission 2019 Sourcebook, at 64.

15        Zepeda is also correct that, if sentenced today, he would receive a shorter

16   sentence.  Section 403(a) of the First Step Act amended § 924(c) such that the stacking

17   mandatory minimum sentences for a second or subsequent conviction of § 924(c) only

18   applies if the defendant's first § 924(c) conviction is final at the time of the second or

19   subsequent conviction.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 §

20   403(a); *Maumau*, 993 F.3d at 824.  Zepeda had no prior § 924 conviction at the time of

21   his conviction in CR-08-01329-PHX-ROS-1.  He therefore would be outside the reach of

22   § 924(c) today.  The overwhelming majority of Zepeda's total sentence—1,020 of 1,083

23   months—is based on his § 924(c) offenses.  (Doc. 55 at 3).

24        The government suggests that the disparity of Zepeda's sentence as a result of the

25   First Step Act should not be considered because Zepeda's motion "essentially asks this

26   Court to retroactively apply the First Step Act's provisions, which contravenes the"

27   provision of the First Step Act's non-retroactivity provision.  (CR-08-01329-PHX-ROS-1

28   Doc. 269 at 10).  The government cites as support *United States v. Jarvis*, 999 F.3d 442,

445-46 (6th Cir. 2021)[5] and *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021), which held sentence disparities resulting from the First Step Act do not constitute extraordinary or compelling reasons because of the First Step Act's non-retroactivity provision. Zepeda relies on cases such as *McCoy*, 981 F.3d at 285-86 and *United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021), which held sentence disparities resulting from the First Step Act could constitute extraordinary or compelling reasons justifying compassionate release.[6]

The Court is persuaded by the Fourth and Tenth Circuits. Zepeda is not asking the Court to apply the First Step Act retroactively. Rather, Zepeda is asking the Court to consider the relative severity of his sentence as one of many factors to be considered in the compassionate release or sentence reduction analysis. The Court does not believe that it must blind itself to the severity of a movant's sentence when conducting compassionate release analysis under 18 U.S.C. § 3582(c)(1)(A)(i). In *United States v. McGee*, the Tenth Circuit reasoned,

> [t]he plain text of § 401(c) of the First Step Act makes clear that Congress chose not to afford relief to *all* defendants who, prior to the First Step Act, were sentenced to mandatory life imprisonment under § 841(b)(1)(A). But nothing in § 401(c) or any other part of the First Step Act indicates that Congress

---

[5] The Sixth Circuit has been inconsistent on this issue. *Compare United States v. Owens*, 996 F.3d 755, 763-64 (6th Cir. 2021) *with Jarvis*, 999 F.3d at 445-46.

[6] There is a split among circuits over whether the First Step Act's modification of § 924 may contribute to the extraordinary and compelling reasons for a reduced sentence or compassionate release. The Fourth and Tenth Circuits have held that it may be considered in the extraordinary and compelling analysis. *See McCoy*, 981 F.3d at 285-86 ("We think courts legitimately may consider, under the 'extraordinary and compelling reasons' inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair."); *McGee*, 992 F.3d at 1047; *Maumau*, 993 F.3d at 837. The Third and Seventh Circuits have held the opposite. *See United States v. Andrews*, 12 F.4th 255, 260-61 (3d Cir. 2021) ("The duration of a lawfully imposed sentence does not create an extraordinary or compelling circumstance."); *United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) ("[T]here is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute."). The Sixth Circuit has been inconsistent on this issue. *See supra* note 5. In *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021), it held sentence disparity as a result of the First Step Act could not be considered. But in *Owens*, 996 F.3d at 763-64, it held it could be considered and characterized *Tomes* as merely holding that sentence disparity could not be the only basis for § 3582(c)(1)(A)(i) relief. The Ninth Circuit has not addressed the issue. A petition for certiorari currently pends before the Supreme Court seeking to resolve the split. *See* Brief for Petitioner, *Jarvis v. United States*, No. 21-568.

> intended to prohibit district courts, on an individualized, case-by-case basis, from granting sentence reductions under § 3582(c)(1)(A)(i) to *some* of those defendants.

*United States v. McGee*, 992 F.3d 1035, 1047 (10th Cir. 2021).  This does not mean the sentencing disparity is or could be sufficient by itself, or that the Court will apply the First Step Act to Zepeda at this juncture.  It merely means the Court will consider the relative severity of Zepeda's sentence as one of many factors in determining whether a sentence reduction is appropriate under § 3582(c)(1)(A)(i), as other courts have done.  *See, e.g.*, *McCoy*, 981 F.3d at 285-86; *Owens*, 996 F.3d at 761-63 (collecting cases); *McGee*, 992 F.3d at 1047; *Maumau*, 993 F.3d at 837; *United States v. McDonel*, 513 F.Supp.3d 752, 756-57 (E.D. Mich. 2021); *United States v. Quinn*, 467 F.Supp.3d 824, 831 (N.D. Cal. 2020); *United States v. Price*, 496 F.Supp.3d 83, 87-90 (D.D.C. 2020); *Bellamy v. United States*, 474 F.Supp.3d 777, 786 (E.D. Va. 2020); *United States v. Stephenson*, 461 F.Supp.3d 864, 874 (S.D. Iowa 2020).

Zepeda's sentence was greater after trial than what he would have received if he pled pursuant to the plea agreement offered.  Zepeda was initially offered a 10-year sentence in exchange for pleading guilty.  (CR-08-01329-PHX-ROS-1 Doc. 246 at 29).  The prosecution pursued charges that, if proven, guaranteed a sentence greater than 80 years.  By contrast, Zepeda's co-defendants entered into plea agreements that resulted in a sentence of 75 months for Matthew and three years for Jeremy (later reduced to time-served).  (CR-08-01329-PHX-ROS-1 Doc. 269 at 4).  If Zepeda had pled guilty, and thus forfeited several constitutional rights, he would have benefited from lenient treatment, like his brothers.  Instead, he received a de facto life sentence.  The prosecution committed no wrongdoing, nor was it unethical or unusual for the government to pursue Zepeda's conviction in this manner after he failed to accept the plea agreement.  Nevertheless, the Court will consider the penalty Zepeda suffered from his decision to proceed to trial.

In a recent case, *United States v. Maumau*, the Tenth Circuit upheld compassionate release in a similar case involving an inmate who received a 57-year

sentence due to § 924(c)'s consecutive mandatory minimums. *Maumau*, 993 F.3d at 837. The defendant, Kepa Maumau, robbed three stores with the aid of a fellow gang member. *Id.* at 824-25. He was convicted on one count of Hobbs Act robbery, one count of conspiracy to commit racketeering, two counts of violence in aid of racketeering, and three counts of using a gun during a crime of violence under § 924(c). *Id.* at 824. Like Zepeda, Maumau turned down a 10-year plea deal and received a much longer sentence due to § 924(c)'s stacking mandatory minimums prior to the First Step Act. *Id.* at 829. The Tenth Circuit upheld compassionate release, reasoning that the district court had authority to determine, based on the 18 U.S.C. § 3553(a) sentencing factors and the relative disparity of Maumau's long sentence, that extraordinary and compelling reasons existed for Maumau's release.[7] *Id.* at 829, 831-33.

Zepeda presents similar reasons for release as Maumau. Like Maumau, he was relatively young,[8] with a limited criminal record,[9] when he committed the offense for which he received the severe sentence. Like Maumau, he alleges plans for residential and employment placement if he is released.[10] And, like Maumau, his sentence would have been substantially shorter today because § 924(c), as amended by the First Step Act,

---

[7] As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) permits modification of a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Maumau* held the district court had discretion to determine which factors were extraordinary and compelling and that those factors could be sufficient for compassionate release in the absence of an applicable policy statement by the Sentencing Commission. *Maumau*, 993 F.3d at 831, 833-36.

[8] Maumau was 20 when he committed the predicate offense to his § 924 convictions, *Maumau*, 993 F.3d at 824; Zepeda was 23. (CR-08-01329-PHX-ROS-1 Doc. 246 at 4).

[9] Maumau had no prior criminal record, *Maumau*, 993 F.3d at 827; Zepeda had no prior felony or firearms offenses and had never served a jail term. (CR-08-01329-PHX-ROS-1 Doc. 246 at 5). Zepeda alleges two prior misdemeanor charges for marijuana were dismissed as a result of Arizona Proposition 207, which legalized recreational marijuana use in this state. (CR-08-01329-PHX-ROS-1 Doc. 246 at 5). The marijuana offenses comprised half of his four criminal history points at sentencing. (CR-08-01329-PHX-ROS-1 Doc. 246 at 5). Zepeda's two other criminal history points came from two misdemeanor assault charges. (CR-08-01329-PHX-ROS-1 Doc. 246 at 10). Zepeda received only a fine and probation terms for the assaults. (CR-08-01329-PHX-ROS-1 Doc. 246 at 28).

[10] Zepeda says he has arranged for residential placement and employment at the Center for Better Choices for Life. (CR-08-01329-PHX-ROS-1 Doc. 246 at 42). Based on the letters written by Zepeda's family members that were provided to the Court, it also may be that Zepeda could expect to reintegrate into his family unit if he were released. (CR-08-01329-PHX-ROS-1 Doc. 246-1 at 76-86).

1   would not apply to him.[11]

2      Despite all these considerations, compassionate release is not warranted.  Zepeda

3   has failed to establish why extraordinary and compelling reasons justify his release

4   today.[12]  Compassionate release is an extraordinary remedy; a limited exception to the

5   general rule that federal courts are forbidden to modify a term of imprisonment once it

6   has been imposed.  *See Freeman v. United States*, 564 U.S. 522, 526 (2011); *Maumau*,

7   993 F.3d at 830.  Although Zepeda's 90-year sentence is severe, that severity does not

8   warrant immediate release after he has served only 14% of the 90-year sentence.  (CR-

9   08-01329-PHX-ROS-1 Doc. 269 at 4).

10     The Court appreciates the significance of the factors Zepeda has raised in support

11  of his motion for compassionate release.  Zepeda is encouraged to maintain his good

12  behavior while incarcerated, to continue to pursue educational opportunities, and to

13  maintain supportive contact with his unincarcerated family.  (CR-08-01329-PHX-ROS-1

14  Doc. 246 at 32-40).   The Court does not minimize the risks inmates face as a result of the

15  COVID-19 pandemic, especially in light of the Omicron variant.  But viewing all the

16  considerations Zepeda has raised, the Court holds he has made only the showing that

17  extraordinary and compelling reasons may exist for his sentence to be reduced.

18     **B.  Zepeda's motion for reduced sentenced will be denied without prejudice**

19  [11] 1,020 months of Zepeda's 1,083-month sentence are attributable to his § 924(c)
20  convictions, which were consecutive.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 4).
    Zepeda's sentence on the non-§ 924(c) convictions run concurrently for a total of 63
21  months.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 4).  If the First Step Act had applied to
    Zepeda, and the Court chose to impose consecutive sentences on all of his remaining
    convictions, he would have received 312 months (26 years).  (CR-08-01329-PHX-ROS-1
22  Doc. 269 at 4).
23  [12] Although Zepeda argues he is at elevated risk of contracting COVID-19, he has failed
    to make the showing that would warrant immediate release.  Zepeda claims he is at risk
24  of diabetes and is obese, which would increase his risk of severe illness.  (CR-08-01329-
    PHX-ROS-1 Doc. 246 at 34).  But Zepeda does not actually have diabetes and therefore
    the risk is hypothetical.  (CR-08-01329-PHX-ROS-1 Doc. 246 at 36).  Zepeda's obesity
25  alone, although a potential risk factor, is not extraordinary and is not a compelling reason
    to justify release.   Moreover, Zepeda would ecrease the risk of serious COVID-19
26  infection by becoming vaccinated.  He has refused vaccination against COVID-19, which
    is his choice.  (CR-08-01329-PHX-ROS-1 Doc. 269 at 15).  *Cf. United States v. Baeza-*
27  *Vargas*, 532 F.Supp.3d 840, 843-44 (D. Ariz. 2021) ("Judges of this Court, as well as
    others around the country, have ruled with consistency that an inmate's denial of a
28  COVID-19 vaccination weighs against a finding of extraordinary and compelling
    circumstances.") (citations omitted).

Because this Order vacates Zepeda's sentence, the Court will deny Zepeda's request for reduced sentence without prejudice.  In advance of his resentencing, Zepeda may submit a motion for reduced sentence, the government will respond, and Zepeda may reply and the Court will determine whether extraordinary and compelling reasons warrant modifying Zepeda's sentence beyond the reduction required by vacating his conviction on Count 3.[13]

In the briefing on a possible sentence reduction, the parties should explain the range of sentences that would have been available to Zepeda if the First Step Act changes had applied to him, the range of sentences the Court should consider imposing at resentencing, and the reasons and authorities supporting reducing Zepeda's sentence, or not.

### CONCLUSION

The Court will vacate Zepeda's conviction and sentence as to Count 3.  The Court will further vacate Zepeda's sentence on the remaining counts so he can be resentenced. Although the Court holds Zepeda is not entitled to compassionate release, the Court will deny his motion (CR-08-01329-PHX-ROS-1 Doc. 246) without prejudice to allow Zepeda to refile a motion for a reduced sentence which will be resolved at his resentencing.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (Doc. 55) is **ADOPTED**. Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence under 28 U.S.C. § 2255 (Doc. 1; CR-08-01329-PHX-ROS-1 Doc. 236) is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** Petitioner's conviction and sentence as to Count 3 of the indictment—use of a firearm during a crime of violence—and Petitioner's sentence as to Counts 1, 2, 4, 5, 6, 7, 8, and 9 are **VACATED**.  Petitioner will accordingly be resentenced in future proceedings.

---

[13] The Court also acknowledges there is a petition for certiorari pending before the Supreme Court which, if granted, could lead to a ruling that determines whether Zepeda's motion for compassionate release may be granted.  *See* Brief for Petitioner, *Jarvis v. United States*, No. 21-568.

**IT IS FURTHER ORDERED** a Certificate of Appealability is **DENIED** because Petitioner has failed to make a substantial showing of the denial of a constitutional right under 28 U.S.C. § 2253(c)(2).

**IT IS FURTHER ORDERED** Petitioner's Amended Motion for Compassionate Release/ Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED WITHOUT PREJUDICE.** Plaintiff shall file a renewed motion for reduced sentence no later than **February 7, 2022**. Respondent shall file a response no later than **February 28, 2022**. Petitioner may then file a reply no later than **March 10, 2022**. The Court shall schedule sentencing in a future order.

Dated this 11th day of January, 2022.

Honorable Roslyn O. Silver
Senior United States District Judge